**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-40456
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

KELVIN RUCKER,

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Texas
USDC No. 1:96-CR-80-2

June 19, 1998

Before JOLLY, BENAVIDES and PARKER, Circuit Judges.

PER CURIAM:[*]

Kelvin Rucker appeals his conviction for conspiracy to distribute and possess with intent to distribute cocaine base and possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1). We affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

FACTS AND PROCEEDINGS BELOW

On April 22, 1996, Rucker was a passenger in a vehicle being driven by Amos E. Wilson. Texas Department of Public Safety (DPS) Trooper Richard Eatherly stopped their vehicle on Interstate 10 between Winnie and Beaumont, Texas, for following a semi-tractor-trailer at an unsafe distance. Neither Wilson nor Rucker had a valid driver's license. After receiving permission from Wilson to search the vehicle, the trooper discovered a package under the hood of the car containing approximately 124.11 grams of crack cocaine. The trooper then arrested Rucker and Wilson and read them their *Miranda* rights.

Wilson denied knowing the amount of drugs and told the officer that Rucker had purchased the drugs and placed them in the vehicle. Rucker stated that he did not know the amount of drugs in the car, but admitted to paying approximately $3,500 for the crack cocaine.

About an hour after the arrests, the arresting officer informed a DPS investigator that Rucker and Wilson wished to cooperate and wanted to be interviewed. After an interview, Rucker agreed to cooperate with the police in a controlled buy. During the course of this meeting, Rucker admitted that the crack cocaine found in the car was his and filled in the details of the drug purchase. He also admitted that he had made some cocaine deals before. In consent forms dated April 23 through 25, 1996, Rucker gave his authority and consent

2

to the Texas Department of Public Safety to make full use of anything heard and/or recorded over said telephone in any criminal prosecution under the laws of the State of Texas or the United States.

On April 23, 1996, Rucker began participating in a controlled drug buy. The plan was that Rucker would try to purchase one-half a kilogram of crack cocaine from the same drug supplier from whom he had purchased the drugs found in his car at the time of his arrest. Over a period of three days, telephone conversations between Rucker and his source were recorded and were later admitted into evidence at Rucker's trial. However, the controlled buy was eventually called off because the deal could not be set up as planned and an alternative plan was unsafe. Rucker was released on April 25, 1996, pending the filing of federal charges. On April 30, 1996, Rucker called one of the investigating officers and told him a story that conflicted with his previous statements, but at no time did Rucker tell the officers that Wilson had intimidated him into "taking a rap" on the drug charges.

Rucker testified at trial and stated that Wilson intimidated him into signing an affidavit, dated April 24, 1996, stating that the drugs were his and that Wilson knew nothing about the drug deal. Rucker also presented other witnesses who testified that Rucker would never be involved with drugs and that Rucker was afraid of Wilson.

The jury found Rucker guilty on both counts of the indictment. The court sentenced Rucker to 108 months' imprisonment on each

3

count, to be served concurrently and followed by five years supervised release.

ANALYSIS

Rucker presents three grounds of error, all related to his contention that the district court erred by allowing the introduction of the evidence concerning the controlled drug buys. He argues that the taped telephone conversations were subsequent bad acts which, under Federal Rules of Evidence 404(b), should not have been admitted and that the prejudicial effect of this evidence outweighed its probative value. Rucker also argues that the prejudicial effect of this evidence was not mitigated by a limiting instruction and that the trial court reversibly erred in failing to conduct an on-the-record analysis of the probative value and the prejudicial effect of the evidence.

STANDARD OF REVIEW

Rucker asserts that he "was granted a running objection to the line of testimony" concerning his participation in the controlled drug buy. The government argues, and the record reveals, that that characterization is inaccurate. Rucker objected to the narrative nature of the officer's answers regarding the drug transaction which lead to Rucker's arrest. ("Your Honor, I believe she's supposed to ask him question rather than him just continuing to--"). The district court found the narrative nature of the answers permissible under the circumstances, overruled the

4

objection, and allowed Rucker to have a "running objection" to "all of this line of testimony." Rucker did not object to the introduction of the tape recordings of the telephone conversations between Rucker and his source, transcripts of those conversations, or testimony regarding the conversations, except to the extent that the officer was "translating." Nor did he object to testimony concerning the circumstances of the controlled buy. Accordingly, in the absence of an objection, the admission of the evidence should be reviewed for plain error. *See United States v. Calverley*, 37 F.3d 160 (5th Cir. 1994). Further, trial counsel did not request limiting instructions, nor did he request the trial court to conduct an on-the-record balancing of the probative value and prejudicial effect of the evidence challenged on appeal, mandating a plain error review of these related issues as well. *Id.*

Under Fed. R. Crim. P. 52(b), we may correct forfeited errors only when the appellant shows the following factors: (1) there is an error, (2) that is clear or obvious, and (3) that affects his substantial rights. *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994)(citing *United States v. Olano*, 507 U.S. 725, 731-37 (1993)). If these factors are established, the decision to correct the forfeited error is within the sound discretion of the court, and the court will not exercise that discretion unless the error seriously affects the fairness, integrity, or public

reputation of judicial proceedings. *Olano*, 507 U.S. at 735-36.

## RULE 404(b)

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

To determine whether "other act" evidence was erroneously admitted, this court must first determine whether the evidence was "intrinsic" or "extrinsic." *United States v. Williams*, 900 F.2d 823, 85 (5th Cir. 1990). "Other act" evidence is intrinsic when it "is 'inextricably intertwined' with the evidence used to prove a crime charged." *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992)(citation omitted). Intrinsic evidence also includes evidence of acts that "are part of a single criminal episode" or "were necessary preliminaries to the crime charged." *Id.* (internal quotations and citations omitted.) Such evidence is admissible to allow the jury to evaluate all of the circumstances under which the defendant acted. *Id.*

The Government argues that the district court did not err in admitting the evidence of the controlled buy because it was intrinsic evidence of the crime charged. We reject the Government's invitation to characterize the evidence as intrinsic.

6

When Rucker agreed to cooperate with the police and participate in the controlled buy, he was no longer acting in furtherance of the conspiracy. Thus, the controlled buy was not "part of a single criminal episode" and is properly characterized as extrinsic. *See Royal*, 972 F.2d at 647.

Having determined that the controlled buy was extrinsic to the offense charged, we must next decide whether the trial court should have excluded it under 404(b). This court has established a two-part test to determine the admissibility of Rule 404(b) evidence: (1) the extrinsic evidence must be relevant to an issue other than the defendant's character and (2) the evidence's probative value must not be substantially outweighed by undue prejudice and the evidence must satisfy the other requirements of Fed. R. Evid. 403.[2] *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978); *see also United States v. Bentley-Smith*, 2 F.3d 1368, 1377 & n.11 (5th Cir. 1993).

A conviction for possession of a controlled substance with intent to distribute requires proof that the defendant knowingly possessed the contraband and intended to distribute it. *United States v. Pineda-Ortuno*, 952 F.2d 98. 102 (5th Cir. 1992). The

---

[2]Fed. R. Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . ." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Government argues that the evidence of the controlled buy is admissible because it was relevant to an issue other than Rucker's character, that is, to show Rucker's active involvement in the charged conspiracy and to counter Rucker's counsel's claim in opening statements that Rucker "did not even know what drugs were." According to the Government, Rucker's behavior during the attempted controlled buy tended to show that he knew individuals who could obtain large quantities of cocaine and that Rucker knew "drug slang." Because such knowledge has a "tendency to make the existence of [the required mens rea] more probable . . . than it would be without the evidence," *see* Fed. R. Evid. 401, we find that it is relevant, and thus passes the first prong of the *Beechum* test.

The next question is whether the probative value of this extrinsic evidence is substantially outweighed by undue prejudice. *Ridlehuber*, 11 F.3d at 523.

The Government contends that the evidence of the controlled buy was not offered to prove Rucker's character as a drug dealer, but rather to disarm the anticipated defense that he knew nothing about the drugs and had been intimidated by Wilson into accepting the blame for a crime of which he had no knowledge and in which he did not participate. Because Rucker, through his counsel's opening argument, put his knowledge of drugs and drug trafficking in issue, the probative value of the evidence was not outweighed by undue

prejudice. Consequently, we hold that it was not error, much less plain error, to admit evidence of the controlled drug buy. Further, even if the evidence had been excluded, the remaining evidence pointed overwhelmingly to Rucker's guilt.

Therefore, we affirm Rucker's conviction.

AFFIRM.

9